UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| ELIZABETH DEAN, AMBER GILCHRIST, MELANIE HICKMAN; LATRICIA MCGEE; MARK PARKER; MARIA WARD; CURTIS WARDWELL; and ALANNAH WILSON, <br><br>Plaintiffs, <br><br>v. <br><br>DRAUGHONS JUNIOR COLLEGE, INC. d/b/a DAYMAR INSTITUTE; DAYMAR HOLDINGS, INC.; DAYMAR PROPERTIES OF CLARKSVILLE, LLC; DAYMAR PROPERTIES OF MURFREESBORO, LLC; DAYMAR PROPERTIES OF NASHVILLE, LLC; DAYMAR COLLEGES GROUP, LLC.; MARK A. GABIS; and UNKNOWN DEFENDANTS, <br><br>Defendants. | Case No. 3:12-cv-0157 <br>Judge Trauger |

## MEMORANDUM

The plaintiffs have filed a Motion to Remand (Docket No. 28), to which the defendants have filed a Response in opposition (Docket No. 31), and the plaintiffs have filed a Reply (Docket No. 34). For the reasons stated herein, the Motion to Remand will be denied.

## BACKGROUND[1]

The Daymar Institute is a private post-secondary institution within Tennessee that offers post-secondary educational degrees. The Daymar Institute consists of three campuses, located in Clarksville, Nashville, and Murfreesboro, Tennessee.

---

[1] Unless otherwise noted, all allegations are drawn from the Complaint. (*See* Docket No. 1, Ex. 1.)

1

**I.     The Parties**

The defendants in this case include:

- Five companies incorporated in Tennessee with a principal place of business in Owensboro, Kentucky, each of which is "in the business of operating colleges throughout Tennessee offering various levels of higher education Degrees." (*See* Compl. ¶¶ 9 (Draughons Junior College, Inc. d/b/a Daymar Institute), 10 (Daymar Holdings, Inc.), 11 (Daymar Properties of Clarksville, LLC); 12 (Daymar Properties of Murfreesboro, LLC); and 13 (Daymar Properties of Nashville). The parties do not dispute that, for purposes of diversity jurisdiction in this case, these defendants constitute Tennessee citizens (as well as Kentucky citizens). Hereinafter, the court will refer to these companies as the "Tennessee Company Defendants."

- One company, Daymar Colleges Group, LLC ("Daymar Colleges Group"), incorporated in Kentucky with a principal place of business in Kentucky, that "is in the business of operating Daymar Institutes in Tennessee offering various levels of higher education degrees." (*Id.* ¶ 14.) The parties do not dispute that Daymar Colleges group is a Kentucky citizen only.

- One individual, Mark A. Gabis ("Gabis"), a Kentucky resident who is "the president and principal shareholder and/or member of a multitude of companies operated under the Daymar Institute label engaged in the offering of a variety of higher education Degrees to students in Tennessee," and who, "in his various Daymar operations [,] maintains their principal offices in Owensboro Kentucky."[2] (Compl. ¶ 15.) The parties do not dispute that Gabis is a Kentucky citizen only.

The named plaintiffs are eight Tennessee residents who are current and former students of the Daymar Institute. They have filed this case as a putative class action, broadly alleging that the defendants improperly marketed the Daymar Institute's educational services by, *inter alia*, making false and misleading representations concerning its career placement statistics, the quality of its educational services, the full transferability of credits to incoming students,

---

[2]All of the company defendants maintain a principal place of business at the same address in Owensboro, Kentucky.

conditions relating to the sale of textbooks, and the availability of federal financial aid on favorable repayment terms. The plaintiffs allege that these false and misleading representations induced them to, *inter alia*, enroll at the Daymar Institute, purchase textbooks at inflated rates, and accrue significant educational debt.

## II. The Claims

The plaintiffs, on behalf of themselves and others similarly situated, assert claims for declaratory relief, conspiracy, breach of oral and written contract, breach of implied contract, fraudulent inducement, violation of the Tennessee Consumer Protection Act (Tenn. Code Ann. § 47-18-101 ("TCPA")), fraud, misrepresentation, injunctive relief, and violation of Tennessee antitrust laws.

The Complaint alleges that, with respect to each of the ten causes of action, all defendants are directly liable. In articulating each cause of action, the Complaint draws no distinctions among the Tennessee Company Defendants, Daymar Colleges Group (a Kentucky citizen), and Gabis (a Kentucky citizen). Instead, with the exception of the conspiracy claim, which includes specific allegations of misconduct by Gabis (Compl. ¶¶ 93-95), the Complaint essentially treats all of the defendants uniformly as "defendants" or "the defendants."[3]

---

[3] *See, e.g.*, Count I (seeking a declaratory judgment in various respects, based on the actions of "Defendants"); Count IV (claiming breach of implied contract due to the "[t]he aforesaid wrongful acts of the Defendants"); Count V (claiming that "Defendants fraudulently induced and misrepresented" various facts to plaintiffs, that "Defendants knew that the aforesaid misrepresentations were false when made," and "Defendants made these representations with the intent to induce Plaintiffs and others similarly situated to rely upon them and purchase services from Daymar and Defendants"); Count VI (claiming violations of the TCPA because "Defendants made numerous misleading statements and a number of false representations"); Count VII ("Defendants, both named and others unnamed, acting pursuant to a common scheme . . . set out to defraud Plaintiffs"); Count VIII (claiming that "[t]he foregoing wrongful acts of the Defendants also constitute negligent misrepresentations . . . .").

Similarly, with respect to relief sought by the plaintiffs, the Complaint draws no distinctions among the defendants. From or with respect to all defendants collectively, the Complaint demands injunctive relief, declaratory relief, compensatory damages of $25,000,000.00, punitive damages for "malicious willful and wanton conduct and gross negligence" by "the Defendants," attorney's fees, and costs. (Compl. ¶¶ 108-109, 111-114, and at p. 24.)

### III. Procedural History

On January 9, 2012, the plaintiffs filed this case in the Circuit Court of Davidson County, Tennessee. On February 8, 2012, the defendants timely filed a Notice of Removal, which asserted that this court has subject matter jurisdiction based on (a) diversity jurisdiction, pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d); and/or (b) the presence of a substantial federal question. (Docket No. 1.)

On March 9, 2012, the plaintiffs filed the instant Motion to Remand (Docket No. 28), which is supported by, *inter alia*, a Memorandum of Law (*id.*, Ex. 1) and an Affidavit of Kenneth L. Sales (*id.*, Ex. 3). The Sales Affidavit includes the following assertions: (1) upon information and belief, defendant Daymar Holdings, Inc., a Tennessee corporation, is the sole owner of defendant Draughons Junior College, Inc., also a Tennessee corporation; (2) upon information and belief, Draughons Junior College, Inc. operates each of the three Daymar Institute in Tennessee; and (3) "[f]or purposes of 28 U.S.C. § 1332(d) [*i.e.*, CAFA], Draughons Junior College, Inc. and Daymar Holdings, Inc. are the primary defendants in this action."

### ANALYSIS

### I. CAFA

4

Typically, where there is less than complete diversity – *i.e.*, where at least one plaintiff and one defendant are residents of the same state – a federal court lacks diversity jurisdiction. *See U.S. Fid. & Guar. Co. v. Thomas Solvent Co.*, 955 F.2d 1085, 1089 (6th Cir. 1992); *see also* 28 U.S.C. § 1332(a) (2012). However, in 2005, CAFA amended 28 U.S.C. § 1332 to expand federal diversity jurisdiction over class actions, permitting defendants to remove to federal court any sizable class action involving minimal diversity of citizenship, under specified circumstances. *See* 28 U.S.C. § 1332(d); *Smith v. Bayer Corp.*, --- U.S. ---, 132 S. Ct. 2368, 2382, 180 L. Ed. 2d 341 (2011); *Hall v. State Farm Mut. Auto. Ins. Co.*, 215 Fed. App'x 423, 424 (6th Cir. 2007).

Determining whether a court has jurisdiction over a class action removed by defendants pursuant to CAFA essentially involves a two-step process. First, the removing defendant has the burden to show that CAFA's basic jurisdictional requirements have been met. *See Smith v. Nationwide Property & Cas. Ins. Co.*, 505 F.3d 401, 404-405 (6th Cir. 2007); *Lancaster v. Daymar Colleges Grp., LLC*, No. 3:11-CV-157, 2012 WL 524459, at *3 (W.D. Ky. Feb. 15, 2012).[4] Second, if those jurisdictional requirements have been met, the plaintiff has the burden

---

[4]In *Lancaster* and two related cases, current and former students of the Daymar Colleges Group (apparently a Daymar Institute equivalent operating post-secondary schools in Kentucky, Indiana, and Ohio) alleged substantially similar claims as those asserted here. The district court found that jurisdiction under CAFA was appropriate and that, because the plaintiffs had not provided sufficient evidence that at least 1/3 of the proposed class members were citizens of the same state as the primary defendants (*i.e.*, Kentucky), no exceptions to jurisdiction applied. *See Lancaster*, 2012 WL 534459, at *3-*10; *Albury v. Daymar Colleges Grp., LLC*, No. 3:11-CV-573, 2012 WL 524480, at *3-*10 (W.D. Ky. Feb. 15, 2012); *Wiggins v. Daymar Colleges Grp., LLC*, No 5:11-cv-36, 2012 WL 525449, at *3-*10 (W.D. Ky. Feb. 15, 2012). Unlike here, the parties in *Lancaster*, *Albury*, and *Wiggins* explicitly agreed that the "primary defendants" were citizens of one state – Kentucky. *See, e.g.*, *Lancaster*, 2012 WL 525449, at *4. Accordingly, the court there did not address the issue of what constitutes a "primary defendant" for purposes of CAFA's exemptions.

5

to show that the case falls within one of three enumerated exceptions set forth in § 1332(d).[5]

## II.     Jurisdictional Requirements

With respect to the jurisdictional requirements, CAFA provides that federal district courts have original jurisdiction over "any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interests and costs, and is a class action in which . . . any member of a class of plaintiffs is a citizen of a State different from any defendant," 28 U.S.C. § 1332(d)(2), provided that the proposed class contains at least 100 members. *Id.* § 1332(d)(5)(B). Here, the parties do not dispute that the defendants have met their burden to show that CAFA's jurisdictional requirements have been satisfied.

## III.    Potential Exemptions

The plaintiffs argue that their cause of action falls within either of two exemptions to CAFA jurisdiction. First, under 28 U.S.C. § 1332(d)(4), the court must decline jurisdiction over a class action in which "two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and *the primary defendants*, are citizens of the State in which the action was originally filed." (Emphasis added). Second, under § 1332(d)(3), the court may, subject to

---

[5]Although the Sixth Circuit has not yet addressed the question, federal circuit courts of appeals have "uniformly concluded" that, after general jurisdiction has been established by the removing party, the burden shifts to the party opposing federal jurisdiction to show that an exception to CAFA applies. *Kaufman v. Allstate N.J. Ins. Co.*, 561 F.3d 144, 153-154 (3d Cir. 2009) (collecting cases); *see also Greenwich Fin. Servs. Distressed Mortg. Fund 3 LLC v. Countrywide Fin. Corp.*, 603 F.3d 23, 26 (2d Cir. 2010); *Preston v. Tenet Healthsystem Mem'l Med. Ctr., Inc.*, 485 F.3d 793, 797 (5th Cir. 2007); *In re Sprint Nextel Corp*, 593 F.3d 669, 673 (7th Cir. 2010); *Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1024 (9th Cir. 2007); *Evans v. Walter Indus.*, 449 F.3d 1159, 1164 (11th Cir. 2006); *Lancaster*, 2012 WL 884898, at *2. This interpretation is consistent with the Senate Judiciary Committee Report concerning CAFA, which was issued ten days after CAFA was enacted. *See* S. Rep. No. 109-14, at 43-44 (2005) ("It is the Committee's intention with regard to each of these exceptions that the party opposing federal jurisdiction shall have the burden of demonstrating the applicability of an exemption.")

consideration of certain factors, decline to exercise jurisdiction in which "greater than one-third but less than two-thirds of the members of all proposed plaintiff classes in the aggregate and *the primary defendants* are citizens of the State in which the action was originally filed." (Emphasis added).

Pursuant to the plain language of §§ 1332(d)(3) and (4), both exemptions require that all of the "primary defendants" and a substantial proportion of the proposed plaintiff class (majority or plurality) be citizens of the state in which the action was filed – here, Tennessee. *See Adams v. Macon Cnty. Greyhound Park, Inc.*, 829 F. Supp. 2d 1127, 1138 n.13 (M.D. Ala. 2011) (collecting federal circuit court and district court cases reflecting the "consensus among the courts . . . that the plural use of 'defendants' means that all primary defendants must be citizens of the state in which the action was originally filed. . . .") Stated another way, if at least one primary defendant is diverse from the requisite proportion of the proposed plaintiff class (*i.e.*, is not a Tennessee citizen), neither exemption applies and the court must retain jurisdiction.

Here, the action was filed in Tennessee and the plaintiffs contend that the only "primary defendants" are Draughons Junior College, Inc. and Daymar Holdings, Inc., both of which are Tennessee citizens. By contrast, the defendants argue that the plaintiffs have failed to demonstrate that Kentucky citizens Daymar Colleges Group and Gabis are not "primary defendants," thereby preserving the requisite minimal diversity between the putative class members and the primary defendants.

CAFA does not define the term "primary defendant," nor has the Sixth Circuit addressed the meaning of the term. As several federal courts considering the term have observed, the lack of a definition has led to a number of tests for determining what constitutes a "primary

7

defendant." Some courts, construing the term by reference to an analogous provision of the Multiparty, Multiforum, Trial Jurisdiction Act of 2002, 28 U.S.C. § 1369, have defined "primary defendants" as "those parties that are allegedly directly liable to the plaintiffs, while 'secondary defendants' are . . . those parties sued under theories of vicarious liability or joined for purposes of contribution or indemnification." *Anthony v. Small Tube Mfg. Corp.*, 535 F. Supp. 2d 506, 515-16 (E.D. Pa. 2007) (quoting *Kitson v. Bank of Edwardsville*, Civil No. 06-528-GPM, 2006 WL 3392752, at *17 (S.D. Ill. Nov. 22, 2006)); *see also Laws v. Priority Trustee Serv. of N.C., L.L.C.*, No. 3:08-CV-103, 2008 WL 3539512, at *4 (W.D.N.C. Aug. 11, 2008). Other district courts have adopted different approaches, holding that a "primary defendant" is one who (1) has the greater liability exposure; (2) is most able to satisfy a potential judgment; (3) is the subject of a significant portion of the claims asserted by plaintiffs; or (4) is the only defendant named in one particular cause of action. *See Cooper v. R.J. Reynolds Tobacco Co.*, 586 F. Supp. 2d 1312, 1318 (M.D. Fla. 2008) (citing *Brook v. UnitedHealth Grp. Inc.*, No. 06 CV 12954(GBD), 2007 WL 2827808, at *5 (S.D.N.Y. Sept. 27, 2007) (collecting cases reflecting differing approaches)).[6]

Here, the defendants urge the court to follow those courts that measure "primary" versus

---

[6]As discussed in *Brook*, 2007 WL 2827808, at *5, the Senate Judiciary Committee's Report stated as follows:

> [The] Committee intends that "primary defendants" be interpreted to reach those defendants who are the 'real targets' of the lawsuit – *i.e.*, the defendants that would be expected to incur most of the loss if liability is found. Thus, the term "primary defendants" should include any person who has substantial exposure to significant portions of the proposed class in the action, particularly any defendant that is allegedly liable to the vast majority of the members of the proposed classes (as opposed to simply a few individual class members).

*Id.* (quoting S. Rep. No. 109-14, at 43).

8

"secondary" based on whether a particular defendant faces direct liability, while the plaintiffs urge that the court adopt a more expansive definition. However, the court need not determine the precise definition of "primary defendant," because the plaintiffs have drawn no principled distinction between the Kentucky citizen defendants and the Tennessee Company Defendants in the first place. *See Cooper*, 586 F. Supp. 2d at 1318; *Brook*, 2007 WL 2827808, at *6; *Kurth v. Arcelormittal, U.S.A., Inc.*, No. 2:09-CV-108RM, 2009 WL 3346588, at *6 (N.D. Ind. Oct. 14, 2009).

Notwithstanding the self-serving representations of counsel in the Sales Affidavit, the Complaint conclusively establishes that Gabis and Daymar Colleges Group constitute "primary defendants" under any reasonable interpretation of that term. The plaintiffs allege that Daymar Colleges Group operates Daymar Institutes in Tennessee and that Gabis, as president and principal shareholder, operated the Daymar Institute's offices in Owensboro, Kentucky, which is the principal place of business of all six other defendants in this action. With few exceptions, the plaintiffs draw no relevant distinctions between the conduct of Gabis and the Daymar Colleges Group on the one hand and the Tennessee Company Defendants on the other. Thus, both Gabis and Daymar Colleges Group played a significant role in the misconduct alleged in the Complaint, to the same extent as the other parties. The conspiracy cause of action even contains additional specific allegations of misconduct by Gabis.

Moreover, the plaintiffs seek to hold Gabis and Daymar Colleges Group directly liable to the same extent as the other defendants, under the same causes of action, for the same undifferentiated conduct. The plaintiffs also request the same relief from Gabis and Daymar Colleges Group as they do from the other defendants – including declaratory relief, injunctive

relief, compensatory damages, punitive damages, costs, and attorney's fees. Thus, Gabis and Daymar Colleges, like the remaining defendants, are potentially liable to the proposed class members under all ten causes of action and subject to all of the relief requested. Under these circumstances, Gabis and Daymar Colleges Group plainly do not constitute "secondary" defendants in any meaningful sense.

Accordingly, the court finds that the plaintiffs have not shown that the diverse defendants, Gabis and Daymar Colleges Group, do not constitute "primary defendants" for purposes of the CAFA exemptions. Because Gabis and Daymar Colleges Group are not Tennessee citizens, they are diverse from the putative Tennessee plaintiffs and the exemptions set forth in § 1332(d)(3) and § 1332(d)(4) therefore do not apply. *See Cooper*, 586 F. Supp. 2d at 1318; *Brook*, 2007 WL 2827808, at *6; *Kurth*, 2009 WL 3346588, at *6.

## IV. Remaining Arguments

Because the court finds that the plaintiffs plainly have not shown that Gabis and Daymar are not "primary defendants", the court need not address the parties' remaining disputes, which concern (a) whether the plaintiffs have established the other elements of either CAFA exemption; and (b) whether the case also presents a federal question.

## CONCLUSION

For the reasons stated herein, the Motion to Remand will be denied.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge