UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| ELIZABETH DEAN; AMBER GILCHRIST; MELANIE HICKMAN; LATRICIA MCGEE; MARK PARKER; MARIA WARD; CURTIS WARDWELL; and ALANNAH WILSON, <br><br> Plaintiffs, <br><br> v. <br><br> DRAUGHONS JUNIOR COLLEGE, INC. d/b/a DAYMAR INSTITUTE; DAYMAR HOLDINGS, INC.; DAYMAR PROPERTIES OF CLARKSVILLE, LLC; DAYMAR PROPERTIES OF MURFREESBORO, LLC; DAYMAR PROPERTIES OF NASHVILLE, LLC; DAYMAR COLLEGES GROUP, LLC.; MARK A. GABIS; and UNKNOWN DEFENDANTS, <br><br> Defendants. | Case No. 3:12-cv-0157 <br> Judge Aleta A. Trauger |

## MEMORANDUM

The defendants have filed a Motion to Compel Arbitration and Dismiss or Stay (Docket No. 12) ("Motion to Compel Arbitration"),[1] to which the plaintiffs filed a Response in opposition (Docket No. 48), and the defendants filed a Reply (Docket No. 51). For the reasons stated herein, the court will defer ruling on the Motion to Compel Arbitration pending the submission

---

[1]Although the court initially granted the motion because the plaintiffs had not filed a timely response thereto (Docket No. 27), the court granted the plaintiffs' Motion for Reconsideration of that Order (Docket No. 30) and reinstated the Motion to Compel as a pending motion. Thereafter, the court denied the plaintiffs' Motion to Remand the case to state court (Docket Nos. 39 (Memorandum) and 40 (Order)), denied the plaintiffs' Motion to Conduct Discovery Regarding Arbitration (Docket No. 47), and ordered the plaintiffs to file a Response to the Motion Compel, which they did.

1

of affidavits concerning the limited question of whether, in light of the arbitration clause's fee-shifting provision, arbitrating the enforceability of the agreements at issue would be unconscionable.

## BACKGROUND[2]

### I. Allegations

The court's prior Memorandum denying the Motion to Remand sets forth the factual and procedural history of this case in detail. *See Dean v. Draughons Junior College, Inc.*, No. 3:12-CV-0157, 2012 WL 2357492, at *1-*2 (M.D. Tenn. June 20, 2012). Briefly, the plaintiffs, who are current and former students at one of three "Daymar Institute" campuses in Tennessee, filed a putative class action Complaint in Tennessee state court against the defendants, who allegedly operate or assist in operating the Daymar Institute. The plaintiffs allege that the defendants engaged in a variety of false or deceptive practices in violation of Tennessee law. The defendants properly removed the action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d) (2012). *See Dean*, 2012 WL 2357492, at *5.

### II. The Arbitration Clause

As a condition of enrolling in the Daymar Institute, each plaintiff signed a "Student Enrollment Agreement" ("Agreement") that consisted of a front and back page. (*See* Docket No. 13, Ex. 1 (Agreements as to each plaintiff).) The front page contained a number of terms, as well as a signature block and multiple initial blocks that the plaintiffs signed or initialed, as

---

[2]Unless otherwise noted, all allegations are drawn from the Complaint. (*See* Docket No. 1, Ex. 1.)
2

appropriate, with one exception.³ In relevant part, the Agreement contains the following arbitration clause on the bottom of the back page:

> Any dispute, controversy, or claim arising out of or relating to my enrollment at the College, this Agreement, or the breach thereof, shall be resolved by arbitration in the city in which the campus I attend is located in accordance with the commercial rules of the American Arbitration Association then in effect, and judgment upon the award rendered by the arbitrator may be entered in any court of competent jurisdiction. *All determinations as to the scope or enforceability of this arbitration provision shall be determined by the arbitrator, and not by a court*. The expenses of the arbitration shall be born equally by the parties to the arbitration, and each party shall pay for and bear the cost of its own experts, evidence, and legal counsel. The validity, interpretation, and performance of this Agreement shall be controlled by and construed under the law of the Commonwealth of Kentucky and the Accreditation Criteria of the Accrediting Council for Independent Colleges and Schools (ACICS), as the latter are not inconsistent with the former.

(emphasis added). The provision purporting to delegate to the arbitrator "all determinations as to the scope or enforceability of this arbitration provision," is referred to as a "delegation provision." *See Rent-a-Center West, Inc. v. Jackson*, 130 S. Ct. 2772, 2777, 177 L. Ed. 2d 403 (2010).

### III. The Parties' Arguments

The defendants argue that, under a plain reading of the Student Enrollment Agreement, the plaintiffs must arbitrate their claims and an arbitrator – not this court – will determine the scope of the Agreement and its enforceability. In response, the plaintiffs argue that the court should not compel them to arbitrate their claims, because (1) the defendants waived their right to seek arbitration by removing the action from state court to federal court; (2) the court lacks

---

³Plaintiff Dean did not initial one of the initial blocks in her Agreement. (Docket No. 13 ("Defs.' Mem."), Ex. 1, at p. 1.) Because the court defers consideration of the merits of the plaintiffs' arguments, this fact does not affect the court's analysis at this stage.

subject matter jurisdiction over the controversy; and (3) the court has authority to decide whether the arbitration agreement is enforceable and, pursuant to that authority, the court should find that the Agreement is unenforceable as unconscionable for a host of reasons.[4]

## ANALYSIS

I. **Jurisdictional Challenges**

　　A. **Waiver**

Under the Federal Arbitration Act ("FAA"), a party can waive the right to arbitrate otherwise arbitrable claims based on its participation in litigation. *See Johnson Assocs. Corp. v. HL Operating Corp.*, 680 F.3d 713, 717 (6th Cir. 2012). However, "because of the strong presumption in favor of arbitration, waiver of the right to arbitration is not to be lightly inferred." *Id.* (quoting *Glazer v. Lehman Bros., Inc.*, 394 F. 3d 444, 450 (6th Cir. 2005)). A party may waive an agreement to arbitrate by engaging in two courses of conduct: (1) taking actions that are completely inconsistent with any reliance on an arbitration agreement; and (2) delaying its assertion of the right to arbitrate to such an extent that the opposing party incurs actual prejudice. *Id.* (finding that defendant had waived right to arbitrate, where defendant answered the complaint without asserting the right to arbitration as an affirmative defense, participated in court-supervised settlement discussions, and served discovery).

Here, the plaintiffs contend that, by removing the action from state court to this court, the defendants waived their right to enforce the arbitration agreement pursuant to *Lapides v. Bd. of*

---

[4]Although the defendants vigorously maintain that the delegation provision divests this court of authority to address the plaintiffs' claims of unconscionability on their merits, the defendants have addressed the plaintiffs' unconscionability arguments in their Reply "out of an abundance of caution." (Docket No. 51, Defs.' Reply, at p. 7 n.4.)

4

*Regents of the Univ. Sys. of Ga.*, 535 U.S. 613, 122 S. Ct. 1640, 152 L. Ed. 2d 806 (2002). Because the plaintiffs are asserting that, regardless of the merits of the parties' other arguments, the defendants cannot compel the plaintiffs to arbitrate in the first place, the court will address this argument on its merits, notwithstanding the existence of the delegation provision.

In *Lapides*, the Court held that, where a *state* removes a pending state court action to federal court, the state cannot then assert sovereign immunity from suit in federal court. 535 U.S. at 619. Under those circumstances, the Court reasoned, "[i]t would seem anomalous or inconsistent for a State both (1) to invoke federal jurisdiction, thereby contending that the 'Judicial power of the United States' extends to the case at hand, and (2) to claim Eleventh Amendment immunity, thereby denying that the 'Judicial power of the United States' extends to the case at hand." *Id.* The circumstances in *Lapides* are plainly distinguishable from those presented here, which do not involve any claim of immunity by a sovereign entity seeking both to invoke the court's jurisdiction and to claim immunity from suit therein.

Indeed, in *Dantz v. Am. Apple Grp., LLC*, 123 F. App'x 702, 707 (6th Cir. 2005) (unpublished disposition), the plaintiff argued that, because the defendant had removed the case to federal court based on traditional diversity jurisdiction, the defendant had waived the right to compel arbitration to enforce their arbitration agreement, pursuant to *Lapides*. The Sixth Circuit rejected this argument, holding that "mere removal of a case to federal court, and nothing more, does not constitute waiver of a defendant's right to arbitration." *Id.* (citing *Williams v. Cigna Fin. Advisors*, 56 F.3d 656 (5th Cir. 1995)). The Sixth Circuit also stated that "we refuse to extend *Lapides* beyond the sovereign immunity context." *Dantz*, 123 F. App'x at 707.

Although *Dantz* is unpublished, its reasoning is persuasive, and the plaintiffs have not

5

cited to any contrary authority on this issue. By simply removing this case under CAFA, which provides for an expanded form of diversity jurisdiction under particular circumstances, the defendants have not engaged in an action that is "completely inconsistent" with reliance on the arbitration agreement, nor have they prejudicially delayed asserting the right to arbitrate. To the contrary, the defendants filed the instant Motion to Compel Arbitration only one week after removing the action. Moreover, unlike in *Johnson*, the defendants have not filed an Answer, participated in discovery, or engaged in court-supervised settlement discussions. Therefore, there is no basis on which to find that the defendants have waived their right to pursue arbitration.

      **B.**      **Purported Challenge to "Subject Matter Jurisdiction"**

The plaintiffs argue that this court lacks "subject matter jurisdiction" to compel the parties to arbitrate their claims. (Pltfs. Resp. at p. 25.) They argue that, because the arbitration agreement purports to apply Kentucky law but fails to require that the arbitration take place in Kentucky, this court lacks subject matter jurisdiction and, therefore, may not enforce the Agreement.

As an initial matter, the plaintiffs have misinterpreted Kentucky law. The Kentucky Supreme Court, interpreting Kentucky's version of the Uniform Arbitration Act, has held that a Kentucky court may only enforce an arbitration agreement providing for arbitration within Kentucky. *Ally Cat, LLC v. Chauvin*, 274 S.W.3d 451, 454-55 (Ky. 2009). That is, for a *Kentucky state court* to have subject matter jurisdiction to enforce an arbitration agreement, that agreement must provide for the arbitration itself to take place in Kentucky. *Id*. at 455 ("Subject matter jurisdiction to enforce an agreement to arbitrate is conferred upon a Kentucky court only

if the agreement provides for arbitration in this state. Thus, an agreement to arbitrate which fails to include the required provision for arbitration within this state is unenforceable *in Kentucky courts*.") (emphasis added). Thus, *Ally Cat* concerns – as it must – only the subject matter jurisdiction of Kentucky courts to enforce arbitration agreements, not whether the underlying agreements are otherwise enforceable in a court in some other jurisdiction.

Regardless, the subject matter jurisdiction of a federal court is conferred by *federal* constitutional and statutory law. Indeed, the court has already found that, pursuant to CAFA, it has subject matter jurisdiction over this dispute. *See Dean*, 2012 WL 2357492, at *5.

## II.   The Appropriate Forum to Decide Whether the Plaintiffs' Claims Are Arbitratible

### A.   Overview

"The issue of arbitrability is one for judicial determination, unless the parties 'clearly and unmistakably provide otherwise.'" *Crossville Med. Oncology, P.C. v. Glenwood Sys., LLC*, No. 11-5232, 2012 WL 2401722, at *2 (6th Cir. June 26, 2012) (submitted for publication) (quoting *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649, 106 S. Ct. 1415, 89 L. Ed. 2d 648 (1986)) (emphasis in original). "The question of who has the primary power to decide arbitrability turns upon what the parties agreed about *that* matter. Did the parties agree to submit the arbitrability question itself to arbitration?" *Crossville*, 2012 WL 2401722, at *2 (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995)) (emphasis in original). As to this issue, the law reverses the presumption in favor of arbitration. *Crossville*, 2012 WL 2401722, at *2 (citing *Kaplan*, 514 U.S. at 944-45). "The presumption is thus that the question of arbitrability is for judicial determination unless there is clear and unmistakable evidence to the contrary". *Id.* Courts must interpret "silence or ambiguity" on the matter in favor of a judicial

7

determination of the question of arbitrability. *Id.*

However, parties are free to delegate determinations of arbitrability to the arbitrator. *See Rent-a Center*, 130 S. Ct. at 2777 ("The delegation provision is an agreement to arbitrate threshold issues concerning the arbitration agreement.") However, even where an arbitration agreement contains a delegation provision, the court may consider challenges specific to the enforcement of that clause. *Id.* at 2780. Here, the plaintiffs argue that (1) the language of the delegation provision is not clear and unmistakable; and (2) even if that language is clear and unmistakable, it would be unconscionable to enforce it under the fee-shifting provisions – that is, they argue that the plaintiffs could not even afford to pay an arbitrator to resolve the issue of arbitrability alone.[5]

### B. The Delegation Provision is Clear and Unmistakable

In *Rent-a-Center*, the Court considered an arbitration agreement that provided for arbitration of "all past, present, and future disputes" arising out of the plaintiff Jackson's employment with Rent-a-Center. The agreement included the following provision:

> The Arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Agreement including, but not to limited to any claim that all or any part of this Agreement is void or voidable.

130 S. Ct. at 2775 (internal brackets omitted). The Court regarded this language as an enforceable delegation provision. *Id.* at 2779. *See also Book Depot P'ship v. Am. Book Co.*, No. 3:05-CV-163, 2005 WL 1513155, at *3 (E.D. Tenn. June 24, 2005) (arbitration agreement

---

[5]Although not explicitly stated in the plaintiffs' briefing, the court presumes that, given the nature of their claims and their argument that it would be prohibitively expensive to incur out-of-pocket arbitration costs, the plaintiffs have retained their attorneys on a contingency fee basis. The court expects that the plaintiffs will disclose the nature of their fee arrangement in the affidavits submitted in compliance with this Memorandum and associated Order.

8

specified that "we agree to arbitrate arbitrability"); *Rai v. Ernst & Young*, *LLP*, No. 09-13194, 2010 WL 3518056, at *4-*5 (E.D. Mich. Sept. 8, 2010) (arbitration agreement provided that "[a]ny issue concerning the extent to which any Dispute is subject to arbitration, or the formation, applicability, interpretation or enforceability of the provisions of this [section], including any claim or contention that all or any part of this Agreement is void or voidable, will be . . . resolved by the arbitrators."); *Muhammad v. Advanced Servs., Inc.*, No. 09-2573, 2010 WL 3853230 (W.D. Tenn. Aug. 24, 2010) (compelling arbitration of arbitrability, where agreement stated that "[a]ny dispute concerning the formation, applicability, interpretation, or enforceability of this Agreement shall be subject to arbitration.")

Here, the plaintiffs argue that the delegation provision in the Agreement is not clear and unmistakable: they argue that the lack of the term "void or voidable" and the alleged vagueness of the language compels a finding that the delegation terms are unclear, particularly where those terms reference only "scope and enforceability." The court is not persuaded. The first sentence of the Agreement's arbitration clause states that "[a]ny dispute, controversy, or claim arising out of or relating to my enrollment at the College, this Agreement, or the breach thereof, shall be resolved by arbitration . . . and judgment upon the award rendered by the arbitrator may be entered in any court of competent jurisdiction." The second sentence is the delegation provision, which states that "[a]ll determinations as to the scope or enforceability of *this arbitration provision* shall be determined by the arbitrator, and not by a court." (Emphasis added). Under a plain reading, the delegation provision at least refers to the "scope" and "enforceability" of the agreement to arbitrate contained within the first sentence, and delegates "all determinations" on

9

those issues to an arbitrator.[6] The court does not interpret the differences between this provision and the delegation provision at issue in *Rent-a-Center* as presenting a relevant distinction. Accordingly, the court finds that the parties to each Agreement clearly and unmistakably agreed to delegate the issue of arbitrability to the arbitrator.[7]

### C. **Whether the Delegation Provision is Enforceable**

Under the Federal Arbitration Act:

> A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2 (2012). The FAA thereby "places arbitration agreements on an equal footing with other contracts." *Rent-a-Center*, 130 S. Ct. at 2777. Like other contracts, however, arbitration agreements may be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability. *Id.* A delegation provision within an arbitration agreement constitutes a distinct and severable "written provision" to "settle by arbitration a controversy" for purposes of the FAA, *id.*, which acts as an "additional, antecedent agreement" to "arbitrate threshold issues

---

[6]The plaintiffs argue that "enforceability" could reasonably be construed to refer only to the enforceability of judgments rendered by the arbitrator. However, that is not a reasonable interpretation, because the delegation provision refers to "enforceability of *this arbitration provision*" (emphasis added), not an award rendered by an arbitrator.

[7]Furthermore, the Agreement incorporates the AAA commercial rules, which provide that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." Rule R-7 of the Commercial Arbitration Rules and Mediation Procedures (as amended June 1, 2009). As discussed in *Howard v. Rent-a-Center, Inc.*, No. 1:10-cv-103, 2010 WL 3009515, at *4 (E.D. Tenn. July 28, 2010), although the Sixth Circuit has not yet addressed the issue, the majority of courts have found that incorporation of the AAA rules into an arbitration agreement, standing alone, constitutes the requisite "clear and unmistakable" evidence of the parties' intent to delegate arbitrability. *Id.* (collecting cases); *see also Book Depot P'ship*, 2005 WL 11513155, at *4.

10

concerning the arbitration agreement." *Id.* at 2777. Thus, *"unless [a plaintiff] challenge[s] the delegation provision specifically*, we must treat it as valid under [FAA] § 2, and must enforce it under [FAA] §§ 3 and 4, leaving any challenge to the validity of the Agreement as a whole for the arbitrator." *Id.* at 2779 (emphasis added).

In *Rent-a-Center*, the plaintiff (Jackson) asserted unconscionability challenges to the agreement as a whole, rather than to the delegation provision specifically. Therefore, the Court found that the delegation provision was enforceable and held that it would be for the arbitrator to consider the merits of Jackson's challenges to the enforceability of the entire agreement. The court reasoned as follows:

> [N]one of Jackson's substantive unconscionability challenges was specific to the delegation provision. First, he argued that the Agreement's coverage was one sided in that it required arbitration of claims an employee was likely to bring – contract, tort, discrimination, and statutory claims – but did not require arbitration of claims Rent-a-Center was likely to bring – intellectual property, unfair competition, and trade secrets claims. This one-sided coverage argument clearly did not go to validity of the delegation provision.
>
> Jackson's other two substantive unconscionability arguments assailed arbitration procedures called for by the contract – the fee-splitting arrangement and the limitations on discovery – procedures that were to be used during arbitration under *both* the agreement to arbitrate employment-related disputes *and* the delegation provision.

*Id.* at 2780 (emphasis in original). However, the court suggested that Jackson could have pursued challenges specific to the delegation provision:

> It may be that had Jackson challenged the delegation provision by arguing that these common procedures *as applied* to the delegation provision rendered *that provision* unconscionable, the challenge should have been considered by the court. To make such a claim based on the discovery procedures, Jackson would have had to argue that the limitation upon the number of depositions causes the arbitration of his claim that the Agreement is unenforceable to be unconscionable. That would be, of course, a much more difficult argument to sustain than the argument that the same limitation renders arbitration of his factbound

11

employment-discrimination claim unconscionable. Likewise, the unfairness of the fee-splitting arrangement may be more difficult to establish for the arbitration of enforceability than for arbitration of more complex and fact-related aspects of the alleged employment discrimination. Jackson, however, did not make any arguments specific to the delegation provision; he argued that the fee-sharing and discovery procedures rendered the *entire* Agreement invalid.

*Id.* (emphases in original).

Thus, this court may, as several other courts have done pursuant to *Rent-a-Center*, consider unconscionability challenges that are specific to the delegation provision. *See Howard,* 2010 WL 3009515, at *4 ("Because Plaintiff's argument that delegation itself is unenforceable is specific to the issue of delegation, it must be resolved by this Court."); *see also Rai v. Ernst & Young*, No. 09-13194, 2010 WL 3518056, at *4-*5 (E.D. Mich. Sept. 8, 2010) ("As prescribed by *Rent-a-Center*, this court must examine Plaintiff's claims to see if he challenges the Arbitration Agreement as a whole, or the Delegation Clause itself.")[8]

Here, the plaintiffs assert both that the contract as a whole is unenforceable as

---

[8]For example, in *Howard*, the plaintiff specifically challenged the delegation provision in the arbitration agreement at issue, arguing that (1) it would be contrary to public policy to permit an arbitrator to determine whether his exercise of jurisdiction is appropriate; and (2) because the defendants could choose unilaterally between three potential forums (*i.e.*, three types of arbitration organizations), the delegation provision was unconscionable. *Id.* at *4. Because the plaintiff had asserted challenges specific to the delegation provision, the court considered those challenges, although it ultimately found them to be without merit, held that it would therefore be for an arbitrator to determine arbitrability, and granted the defendants' motion to compel arbitration. *Id.* at *5-*6; *see also Madgrigal v. AT&T Wireless Servs., Inc.*, No. 1:09-cv-0033-OWW-MJS, 2010 WL 5343299 (E.D. Cal. Dec. 20, 2010) ("*Jackson [v. Rent-a-Center]* also confirmed that a provision delegating to the arbitrator authority to determine the validity of an arbitration agreement bars a court from adjudicating a party's claim of unconsionability unless that claim is based on alleged unconscionability of the delegation provision itself."); *Washington v. William Morris Endeavor Ent'mt, LLC*, No. 10 Civ. 9647(PKC)(JCF), 2011 WL 3251504, at *6-*8 (S.D.N.Y. July 20, 2011); *Morocho v. Carnival Corp.*, No. 10-21715-CIV, 2011 WL 147750, at *1 (S.D. Fla. Jan 18, 2011); George A. Bermann, *The Supreme Court Trilogy and its Impact on U.S. Arbitration Law*, 22 Am. Rev. Int'l Arb. 551, 552-59 (2011) (discussing potential complications in applying *Rent-a-Center*).

12

unconscionable and that the delegation provision is unenforceable as unconscionable. With respect to the delegation provision, they argue that, under the fee-shifting provision as applied, it would be unconscionable for them to be forced to arbitrate the issue of arbitrability. (Pltfs. Resp. at p. 13 ("[T]hese Plaintiffs cannot afford to pay an arbitrator to determine the enforceability of the arbitration provision, much less pay the costs of an entire arbitration.")) This argument falls squarely within the potential exception to the delegation requirement articulated in *Rent-a-Center*, which other district courts within the Sixth Circuit – as well as district courts outside of the Sixth Circuit – have recognized and applied. *See, e.g.*, *Howard,* 2010 WL 3009515, at *4; *Rai*, 2010 WL 3518056, at *4-*5.

In support of their position that they could not afford to arbitrate the arbitrability issue, the plaintiffs rely on the findings of fact by a Kentucky trial court in the matter of *Brittany Dixon, et al. v. Daymar Colleges Grp., et al.*, Case No. 10-CV-0132 (Ky. Cir. Ct. Oct. 11, 2010) (Docket No. 48, Ex. 1 (*Dixon* Order)), and on excerpted rules from the AAA Commercial Arbitration Rules and Mediation Procedures. However, reliance on the *Dixon* opinion is in error, because that case concerned (1) different plaintiffs with their own financial circumstances and (2) the prospect of arbitrating in Kentucky, which would not necessarily require the same fees as arbitrating in Tennessee. To make the threshold determination whether this court or an arbitrator will consider the plaintiffs' general unconscionability arguments, the court requires evidence specific to the plaintiffs in this case. The court cannot presume that, because certain students in Kentucky were unable to pay to arbitrate the issue of arbitrability (at least according to the *Dixon* court), that the plaintiffs here similarly could not afford to pay to arbitrate that single issue. Similarly, the court cannot presume what the out-of-pocket costs to arbitrate the issue of

13

arbitrability would be, let alone that plaintiffs could not pay half of those potential costs.

Accordingly, consistent with the guidelines discussed below, the court will permit the parties to supplement the record with necessary evidence concerning the potential out-of-pocket burden on the plaintiffs to arbitrate arbitrability.

**D.     Applicable Law**

With respect to the standard that will govern the court's determination on this particular issue, the court is presented with limited guidance. As an initial matter, the court disagrees with the defendants that, pursuant to *Preston v. Ferrer*, 552 U.S. 346, 360-63, 128 S. Ct. 878, 169 L. Ed. 2d 917 (2008), the Kentucky choice of law provision in the Agreement is "trumped" by the provision stating that the arbitration must be conducted under the AAA commercial rules. In *Preston*, the arbitration agreement at issue included (1) a clause stating that "any dispute . . . relating to the terms of [the contract] or the breach, validity, or legality thereof" would be arbitrated "in accordance with the rules of the [AAA]," *id.* at 352, and (2) a choice of law provision stating that "the agreement shall be governed by the laws of the state of California." *Id.* at 361. The Court found that the "the best way to harmonize the parties' adoption of the AAA rules and their selection of California law is to read the latter [*i.e.*, the California choice-of-law provision] to encompass prescriptions governing the substantive rights and obligations of the parties, but not the State's special rules limiting the authority of arbitrators." *Id.* at 10.

Here, by contrast, the terms are materially distinct from those at issue in *Preston*. The Agreement specifies that "*the validity*, interpretation, and performance of this Agreement shall be controlled and construed *under the laws of the Commonwealth of Kentucky* and the Accreditation Criteria Council for Independent Colleges and Schools (ACICS), as the latter are

14

not inconsistent with the former." (Emphasis added.) The plaintiffs do not appear to dispute that the ACICS criteria only relate to the substance of potential claims between them and the Daymar Institute. Ultimately, the court's obligation is to enforce the Agreement as it is written. *Rent-a-Center*, 130 S. Ct. at 2777. Thus, the best way to harmonize these provisions is to find that the ACICS criteria (whatever their scope) apply to the extent they are not inconsistent with Kentucky law, Kentucky law governs any other issues relating to the validity, interpretation, and performance of this Agreement, and the arbitration must be conducted under the AAA commercial rules on issues other than the validity, interpretation, and performance of the Agreement. Accordingly, the enforceability of the delegation provision, like the enforceability of the Agreement's arbitration provisions as a whole, is governed by Kentucky law.[9]

Nevertheless, with respect to their positions concerning the effect of fee-shifting on the delegation provision, neither party has cited to Kentucky law, aside from the *Dixon* decision. (*See* Pltfs. Resp. at pp. 13-14 (citing to Sixth Circuit decision in *Morrison v. Circuit City Stores*, 317 F.3d 646 (2003) and Ninth Circuit decision in *Ting v. AT&T*, 319 F.3d 1126, 1149 (2003)); Defs. Reply, at pp. 5-6 (citing *Rent-a-Center* and Sixth Circuit decision in *Mazera v. Varsity Ford Mgm't Servs., LLC*, 565 F.3d 997, 1001-02 (6th Cir. 2009)).) Furthermore, none of the cited authorities post-date *Rent-a-Center*. Although the court has located some federal district

---

[9]The court has only located one case in which a court applying *Rent-a-Center* addressed the application of state law to a plaintiff's challenge to the delegation provision in an arbitration agreement. *See Washington*, 2011 WL 3251504, at *6-*8 ("Under *Rent-a-Center*, a remaining inquiry is whether plaintiff contests the validity of the Delegation Provision and if so, *whether under the applicable state law [of New York], this provision is enforceable*.") (emphasis added). However, the court in *Washington* did not actually construe the arbitration agreement as requiring the application of New York law; it simply applied New York law because the plaintiff had assumed it applied and the defendant had relied on New York law in replying to the plaintiff's position. *Id.* at *6 n.3.

15

court decisions applying the narrow exception articulated in *Rent-a-Center* – none of which ultimately found the associated delegation provision to be unconscionable – the court has not located any case in which a fee-shifting provision was even at issue specific to a delegation provision.

In the absence of any controlling authority, the Sixth Circuit decisions in *Cooper v. MRM Inv. Co.*, 367 F.3d 493 (6th Cir. 2004) and *Morrison,* 317 F.3d at 660-65, are instructive. In *Morrison*, the Sixth Circuit held as follows:

> If the reviewing court finds that the cost-splitting provision would deter a substantial number of similarly situated potential litigants, it should refuse to enforce the cost-splitting provision in order to serve the underlying functions of the [FAA]. In conducting this analysis, the reviewing court should take the actual plaintiff's income and resources as representative of this larger class's ability to shoulder the costs of arbitration.

317 F.3d at 663. Adopting this standard, the Sixth Circuit in *Cooper* stated as follows:

> The court must evaluate the likely cost of arbitration not in absolute terms, but *relative to the likely costs of litigation*. The up-front expense of litigation is often minimal, because many employee-plaintiffs can secure a contingency fee agreement where counsel advances discovery costs and defers collection of fees until judgment. Conversely, a plaintiff forced to arbitrate a typical $60,000 employment discrimination claim will incur costs that range from three to nearly *fifty* times the basic costs of litigation in a judicial, rather than arbitral, forum. . . .
>
> [T]he analysis of likely arbitration costs must consider only "up front" costs, not the lower cost that may ultimately result if the arbitrator relieves the employee of costs presumptively imposed by AAA rules (e.g., if the employee prevails on the merits). After all, it is the out-of-pocket costs an employee considers when deciding whether he can afford arbitration [.]

367 F.3d at 511. There, the Sixth Circuit found that a fee-splitting provision in an arbitration agreement was potentially unconscionable, based on the district court's findings that (1) the plaintiff had earned only $7,253.74 in the relevant year and she and others similarly situated often could not afford to pay the high cost of arbitration; (2) there was no indication that Cooper

had any other undisclosed assets or income; and (3) Cooper was likely to incur "significant" up-front costs under the then prevailing AAA rules, which she would not incur in court. *Id.* at 511-12 (remanding for further findings concerning likely arbitration costs); *see also Haro v. NCR Corp.*, No. 3:04-cv-328, 2006 WL 2990386, at *4 (S.D. Ohio Oct. 18, 2006).

Although *Cooper* and *Morrison* predate *Rent-a-Center*, arose in the employment discrimination context, and relate to challenges to an arbitration agreement as a whole, they provide guidance as to the types of proof that the court should consider here. At this stage, the scope of the court's consideration here will be narrower than in *Cooper* and *Morrison*: the court is restricted to evaluating whether the plaintiffs have met their burden to show that the fee-shifting provision *as applied to the delegation provision* is unconscionable. Accordingly, the plaintiffs must demonstrate that the likely up-front costs of arbitrating the issue of arbitrability alone are significant, that they cannot afford to pay those costs collectively, and that the likely cost of arbitrating arbitrability would be disproportionate to the out-of-pocket costs (if any) they would incur (or have incurred) to litigate that issue before this court. As the Supreme Court suggested in *Rent-a-Center*, it will be more difficult to establish unconscionability in this narrower context than in the context of a challenge to the arbitration agreement as a whole, 130 S. Ct. at 2780, because the projected costs of arbitrating an entire dispute are presumably greater than the costs of arbitrating the narrower threshold issues of enforceability.

## **CONCLUSION**

Within 21 days, the parties may file evidentiary affidavits specific to whether the delegation provision is unconscionable in light of the fee-shifting provision. The court defers consideration of the parties' remaining arguments until it determines whether it has the authority

17

to address those arguments in the first instance.

      An appropriate order will enter.

                                                                                 _____
                                                                                 ALETA A. TRAUGER
                                                                                  United States District Judge