# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

ELIZABETH DEAN; AMBER GILCHRIST;    )
MELANIE HICKMAN; LATRICIA MCGEE;   )
MARK PARKER; MARIA WARD; CURTIS   )
WARDWELL; and ALANNAH WILSON,    )
                                   )
     **Plaintiffs,**             )
                                   )    **Case No. 3:12-cv-0157**
**v.**                                )    **Judge Aleta A. Trauger**
                                   )
DRAUGHONS JUNIOR COLLEGE, INC.    )
d/b/a DAYMAR INSTITUTE; DAYMAR     )
HOLDINGS, INC.; DAYMAR PROPERTIES  )
OF CLARKSVILLE, LLC; DAYMAR       )
PROPERTIES OF MURFREESBORO, LLC;  )
DAYMAR PROPERTIES OF NASHVILLE,   )
LLC; DAYMAR COLLEGES GROUP, LLC.;  )
MARK A. GABIS; and UNKNOWN       )
DEFENDANTS,                    )
                                 )
     **Defendants.**            )

## MEMORANDUM

The defendants filed a Motion to Compel Arbitration on February 12, 2012 (Docket No. 12), which the court denied on November 5, 2012 (Docket No. 75), after also denying a Motion to Remand on June 20, 2012 (Docket No. 40) and a Motion to Conduct Discovery Regarding Arbitration on July 11, 2012 (Docket No. 47).[1]  Pursuant to Fed. R. Civ. P. 59(e), the defendants

---

[1]Because the Motion to Remand presented a jurisdictional issue, the court initially permitted the plaintiffs to defer responding to the Motion to Compel.  After the court denied the Motion to Remand and ordered the plaintiffs to respond to the Motion to Compel, the plaintiffs sought leave to conduct discovery before filing their response.  The court denied the plaintiffs' request and ordered the plaintiffs to respond to the Motion to Compel by July 19, 2012.  As discussed herein, after the defendants filed a Reply on July 31, 2012, the court issued an interim ruling concerning the Motion to Compel on August 13, 2012, and ordered the parties to file supplemental materials, the last of which were filed on October 19, 2012 (Docket No. 70).

have filed a Motion to Alter or Amend the court's holding concerning the Motion to Compel

(Docket No. 81), to which the plaintiffs have filed a Response in opposition (Docket No. 89), and

the defendants have filed a Reply (Docket No. 92). For the reasons set forth herein, the

defendants' Motion to Alter or Amend will be granted, the Motion to Compel will be granted, the

court will enforce the Delegation Clause in favor of arbitration, and the case will be stayed

pending arbitration.

## BACKGROUND[2]

### I.     Factual Overview

Briefly, the plaintiffs in this case are current and former students of Daymar Institute

campuses in Tennessee. The defendants allegedly operate or control those campuses. The eight

named plaintiffs, who have filed this case as a putative class action,[3] assert state common law

and state statutory claims against the defendants, whom they claim induced the plaintiffs to

enroll and take out significant student loans based on false or misleading representations about

the quality of the institution and their job placement prospects upon graduation.

### II.    Procedural History and *Dean I*

After the plaintiffs filed this lawsuit, the defendants filed a Motion to Compel Arbitration

---

[2]The factual and procedural history of this case is detailed in the court's previous opinions concerning the Motion to Compel. *See Dean v. Draughons Jr. College, Inc.*, No. 3:12-cv-0157, 2012 WL 3308370 (M.D. Tenn. Aug. 13, 2012) (hereinafter "*Dean I*") [Docket No. 52 in this case]; *Dean v. Draughons Jr. College, Inc.*, – F. Supp. 2d – , 2012 WL 5398653 (M.D. Tenn. Nov. 5, 2012) (hereinafter "*Dean II*") [Docket No. 74 in this case]. Familiarity with those opinions is assumed.

[3]The plaintiffs originally filed this case in the Circuit Court of Davidson County, Tennessee. The defendants properly removed the case to this court pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d) (2012). *See Dean v. Draughons Jr. College, Inc.*, No. 3:12-cv-0157, 2012 WL 2357492 (M.D. Tenn. Aug. 13, 2012) [Docket No. 39 in this case].

(Docket No. 12), arguing that an arbitration clause in each plaintiff's Student Enrollment Agreement ("Arbitration Clause") obligates the plaintiffs to arbitrate their claims. After the plaintiffs countered that the Arbitration Clause was unenforceable for a host of reasons, the defendants argued that a provision within the Arbitration Clause delegated to the arbitrator the issue of whether the agreement was enforceable in the first place ("Delegation Clause"), thereby precluding this court from addressing the plaintiffs' challenges.

In *Dean I*, this court found that the plaintiffs had asserted a cost-prohibitiveness challenge specific to the Delegation Clause, which this court was obligated to consider pursuant to the United States Supreme Court decision in *Rent-A-Center W., Inc. v. Jackson*, 130 S. Ct. 2772, 2780, 177 L. Ed. 2d 403 (2010). *See Dean I*, 2012 WL 3308370, at *7. The court held that Kentucky law of unconscionability would govern the cost-prohibitiveness inquiry, but observed that the parties had not sufficiently briefed that particular issue or provided a factual basis for the court to assess the potential costs of arbitration and the plaintiffs' ability to pay those costs. *Id.* at *8. At the defendants' request, the court granted the parties leave to file additional Kentucky authority as to whether Kentucky recognized a cost-prohibitiveness defense to enforcement of an arbitration agreement. (Docket Nos. 54 and 55.) The court separately ordered the parties to submit relevant evidence. (Docket Nos. 53 and 59.)

In accordance with those orders, the parties filed multiple submissions. The defendants filed the following materials:

- A legal brief in which they argued that Kentucky did not recognize a cost-prohibitiveness defense. (Docket No. 56.)

- With leave of court, a copy of an intervening unpublished decision by the Kentucky Court of Appeals in *Daymar Colleges Grp., LLC v. Dixon*, No. 2010-CA-002039, 2012 WL 4335393 (Ky. Ct. App. Sept. 21, 2012)

(hereinafter "*Daymar*").  (Docket No. 68.)[4]

- The Declaration of Kenyon Meyer (their counsel), which included, in most relevant part, factual averments and exhibits related to the potential costs of arbitration under different scenarios, the actual costs to plaintiffs in the First Set of Kentucky Arbitration Proceedings, and the plaintiffs' representations to the *Dixon* trial court regarding the potential cost of arbitrating arbitrability.  (Docket No. 65.)

The plaintiffs filed the following materials:

- Copies of two decisions by Kentucky courts relating to unconscionability and/or cost-prohibitiveness: (1) *Conseco Fin. Servicing Corp. v. Wilder*, 47 S.W.3d 335 (Ky. App. 2001); and (2) *Schnuerle v. Insight Comm'ns Co., L.P.*, 376 S.W.3d 561 (Aug 23, 2012), an intervening decision by the Kentucky Supreme Court.

- Affidavits from each plaintiff detailing his or her (in)ability to pay the costs of arbitrating arbitrability.  (Docket Nos. 66 and 73.)

- The Affidavit of Kenneth L. Sales (plaintiffs' counsel), in which Attorney Sales made a number of factual representations concerning the defendants' actions in *Dixon* and the First Set of Kentucky Arbitration Proceedings. (Docket No. 66., Ex. 1.)

- Supplemental exhibits concerning the Second Set of Kentucky Arbitration Proceedings.  (Docket No. 70.)

-------

[4]*Daymar* concerned an appeal from the Kentucky trial court's decisions in *Dixon, et al. v. Daymar Colleges Grp., et al.*, Case No. 10-CV-0132 (hereinafter "*Dixon*"), which implicated essentially the same claims, defendants, and Student Enrollment Agreement terms at issue in this case.  After conducting a cost-prohibitiveness analysis pursuant to *Rent-a-Center* (including an evidentiary hearing), the trial court had found that it would be cost-prohibitive for 11 of the 15 plaintiffs to arbitrate and, therefore, only ordered the remaining four plaintiffs (three of whom had simply failed to show up for the hearing to substantiate their cost-prohibitiveness defense) to arbitrate.  In *Daymar*, the Kentucky Court of Appeals reversed, holding that Kentucky does not recognize a cost-prohibitiveness defense, that the plaintiffs' remaining unconscionability arguments were without merit, and, therefore, that those 11 plaintiffs were required to arbitrate their claims.  *Daymar*, 2012 WL 2012 4335393, at *8-*10.  This court has referred to the arbitration proceedings involving the first four plaintiffs as the "First Set of Kentucky Arbitration Proceedings" and the arbitration proceedings involving the remaining 11 plaintiffs (on remand after *Daymar*) as the "Second Set of Kentucky Arbitration Proceedings."

Significantly, neither party sought leave to file additional factual submissions. Thus, in relevant part, the plaintiffs' representations and Attorney Sales' representations were uncontroverted when the court issued its opinion in *Dean II*.

### III.  ___Dean II___

In *Dean II*, this court construed the Kentucky Supreme Court decision in *Schnuerle* as recognizing a Kentucky state law cost-prohibitiveness defense that parallels the cost-prohibitiveness defense available to parties asserting federal statutory claims. *Dean II*, 2012 WL 5398653, at *5-*6. Based on the parties' factual submissions, the court then determined that the plaintiffs could not pay the costs associated with arbitrating the issue of arbitrability, let alone the merits of their claims. *Id.* at *16-*17. In making this determination, the court did not credit the defendants' argument that the cost to each plaintiff would likely fall at the lowest end of the spectrum of possible arbitration costs, in part based on representations in the Sales Affidavit about the defendants' actions in the parallel proceedings in Kentucky.

Having determined that the plaintiffs could not afford to arbitrate arbitrability, the court proceeded to address the enforceability of the agreement as a whole. *Id.* at *17. The court found that the plaintiffs could not afford to arbitrate their claims and that, under Kentucky law, the Arbitration Clause was unenforceable because of cost-prohibitiveness.[5] Therefore, the court denied the defendants' Motion to Compel Arbitration.

### IV.  The Instant Motion

Following *Dean II*, the defendants timely filed the instant Motion to Alter or Amend. In

---

[5]Because the court concluded that the arbitration agreement was unenforceable on that basis alone, the court did not address the merits of the plaintiffs' remaining procedural and substantive unconscionability challenges. *Id.* at *18.

that motion, they argue that the court should reconsider its denial of the Motion to Compel.

They argue that (1) the Sales Affidavit provided an incomplete or misleading characterization of

the defendants' actions in the Kentucky proceedings, from which the court drew unreasonable

inferences; (2) the court committed an error of law in finding that, based on *Schnuerle*, Kentucky

law recognizes a cost-prohibitiveness defense; and (3) even if Kentucky does recognize a cost-

prohibitiveness defense, application of that defense in this case is preempted by the Federal

Arbitration Act ("FAA"), 9 U.S.C. § 2 (2013).  In response to the defendants' motion, the

plaintiffs argue that they did not make any misrepresentations, that this court correctly construed

*Schnuerle*, and that the FAA does not preempt application of a Kentucky cost-prohibitiveness

defense.

## **STANDARD OF REVIEW**

The defendants have moved the court to reconsider *Dean II* pursuant to Fed. R. Civ. P.

59(e) (2013), which permits courts to reconsider "judgments" under appropriate circumstances.

Although the parties have not disputed that the Rule 59 standard applies here, the court notes that

its order accompanying *Dean II*, which did not finally dispose of the case, may not constitute a

"judgment" governed by Rule 59, but rather is an interlocutory order subject to Fed. R. Civ. P.

54.  Nevertheless, although the order denying the Motion to Compel Arbitration did not dispose

of the case as a judgment would, that order was immediately appealable pursuant to FAA §

16(a), the defendants in fact filed an immediate interlocutory appeal (Docket No. 83), and the

Sixth Circuit thereafter withheld exercising appellate jurisdiction until this court resolved the

instant motion (Docket No. 85).  (*See also* Docket No. 91 (Order).)

Regardless of whether Rule 54 or Rule 59 governs the instant motion, both rules permit

this court to correct a clear error of law. *See Louisville/Jefferson Cnty. Metro. Gov't v. Hotels.com, L.P.*, 590 F.3d 381, 389 (6th Cir. 2009) (Rule 54 interlocutory orders); *Leisure Caviar, LLC v. U.S. Fish & Wildlife Serv.*, 616 F.3d 612, 615 (6th Cir. 2010) (Rule 59(e) motions to alter or amend). Moreover, the plaintiffs have not objected to the court's consideration of the merits of the federal preemption argument, which presents a pure question of law that the court did not previously address in *Dean I* or *Dean II*.

## ANALYSIS

### I.    FAA Preemption

The FAA provides as follows:

> A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . , shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of *any* contract."

9 U.S.C. § 2 (2012) (emphasis added). The Supreme Court has referred to the last clause of this provision, which provides for the application of state law defenses applicable to "any contract," as the provision's "savings clause." *See AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 179 L. Ed. 2d 742 (2012). An issue squarely presented by the instant motion is whether a state law cost-prohibitiveness defense constitutes a defense applicable to "any" contract within the meaning of the savings clause. Although the issue is discrete, it implicates a sensitive analysis of Supreme Court precedent, Sixth Circuit precedent, and Kentucky law.

### II.    Vindication of Rights Analysis for Federal Statutory Claims

In a series of cases beginning with *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 637, 105 S. Ct. 3346, 87 L. Ed. 2d 444 (1985), the Supreme Court has indicated that, where a federal statutory right is at issue, a federal court must consider whether

7

the arbitral forum would preclude a claimant from effectively vindicating his or her federal statutory rights, an inquiry that could include a cost-prohibitiveness analysis. *See Mitsubishi*, 473 U.S. at 637 ("[S]o long as the prospective litigant may vindicate its statutory cause of action in the arbitral forum, the [FAA] will continue to serve both its remedial and deterrent function."); *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 28, 111 S. Ct. 1647, 114 L. Ed. 2d 26 (1991) (same); *Green Tree Fin. Corp.-Al. v. Randolph*, 531 U.S. 79, 90, 121 S. Ct. 513, 148 L. Ed. 2d 373 (2000) ("It may well be that the existence of large arbitration costs could preclude a litigant such as Randolph from effectively vindicating her federal statutory rights in the arbitral forum.").

In *Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646, 663-64 (6th Cir. 2003), *Cooper v. MRM Inv. Co.*, 367 F.3d 493, 509-513 (6th Cir. 2004), and *Stutler v. T.K. Constructors, Inc.*, 448 F.3d 343, 345-46 (6th Cir. 2006), the Sixth Circuit construed *Green Tree* as establishing that, under federal substantive law, an arbitration clause is unenforceable if it would prevent a plaintiff from vindicating federal statutory rights because of cost-prohibitiveness. *See Stutler*, 448 F.3d at 346 ("*Green Tree*, *Morrison*, and *Cooper* are limited by their plain language to the question of whether an arbitration clause is enforceable where federal statutorily protected rights are affected.")[6]

---

[6]In *In re Am. Express Merchants' Litig.*, 667 F.3d 204 (2012) ("*AMEX*"), the Second Circuit refused to enforce an arbitration agreement containing a class waiver, on the basis that forcing the plaintiffs to arbitrate their Sherman Act claims (*i.e.*, federal claims) individually would be cost-prohibitive and, therefore, unenforceable under the *Mitsubishi/Green Tree* analysis. That decision is on appeal to the United States Supreme Court, which granted the writ of certiorari and is set to hear argument on February 27, 2013. *See Am. Express Co., et al. v. Italian Colors Restaurant, et al.*, Supreme Court Docket No. 12-133 (filed July 30, 2012). Although the outcome of the *AMEX* appeal should not impact this court's disposition of the pending motion – which does not implicate federal claims – the Court's decision could impact

**III.** **_Stutler_, _Rent-a-Center_, and _Concepcion_**

    **A.** **_Stutler_ and Cost-Prohibitiveness as a Potential Defense Under Federal and/or State Law.**

In _Stutler_, a federal district court had applied the _Green Tree/Morrison/Cooper_ cost-prohibitiveness analysis to invalidate an arbitration agreement governed by Kentucky law. _Id._ at 345. On appeal, a majority of the Sixth Circuit panel held that the district court had erred in doing so, because the court should have considered only contract defenses available under Kentucky law, not the cost-prohibitiveness doctrine specific to the vindication of federal statutory claims. _Id._ Somewhat obliquely, the majority also appears to have concluded that Kentucky did not recognize a cost-prohibitiveness defense, and that, as a consequence, the district court had effectively applied the _Morrison/Cooper_ cost-prohibitiveness analysis to preempt Kentucky law that otherwise would have enforced the arbitration agreement. _See id._ at 346 ("To apply _Morrison_ and _Cooper_ as the district court did is, in effect, to preempt these provisions of Kentucky law, despite the lack of any inconsistency that would permit their preemption by the FAA . . . .") In _dicta_, the majority also noted that, even if it were appropriate to apply the _Morrison/Cooper_ framework to disputes involving state law claims, it "would, in effect, limit the enforcement of arbitration agreements to situations in which all of the parties to the agreement are wealthy. This absurd result, we think, is not what Congress intended when it enacted the FAA." _Id._ at 347.

In a concurring opinion, Judge Karen Nelson Moore wrote separately "to clarify that the majority opinion's fervid rejection of the extension of the cost-deterrent defense to state-law

_____

the continuing validity of the _Mitsubishi/Green Tree_ cost-prohibitiveness defense, even where federal claims are at issue.

disputes *as a matter of federal law* is immaterial to the issue of whether or not such a defense could be properly recognized *as a matter of state law*." *Id.* (emphases in original). In her opinion, "the question of whether a state court or a federal court sitting in diversity could properly recognize a cost-deterrent defense to arbitration as part of a generally applicable contract-defense doctrine is a complicated question deserving of some comment." *Id.* Judge Moore's ensuing analysis identified the crux of the issue now presented by the defendants here: whether, if Kentucky law recognizes a cost-prohibitiveness defense, that defense applies to "any" contract or is specific to arbitration. Judge Moore suggested that a cost-prohibitiveness defense *would* fall within FAA § 2's savings clause, because "a state might determine that in addition to having an interest in enforcing arbitration agreements, it also has an interest in ensuring that residents who can demonstrate that high arbitration costs would deter them from vindicating their common-law rights can avail themselves of generally applicable equitable contract defenses." *Id.* at 348.

Here, in the absence of a tailored preemption objection from the defendants, this court in *Dean II* essentially assumed that the provision was *not* specific to an arbitration agreement, as Judge Moore had suggested might be appropriate. However, as explained herein, having considered the merits of the defendants' preemption argument in light of Supreme Court decisions subsequent to *Stutler*, the court concludes that the cost-prohibitiveness defense *is* specific to arbitration and, therefore, is preempted by the FAA.

B.    The Seeming *Rent-a-Center* Exception

Subsequent to *Stutler*, the Supreme Court issued its opinion in *Rent-a-Center W., Inc.* v. *Jackson*. 30 S. Ct. 2772. *Rent-a-Center* concerned the enforceability of an arbitration agreement

that contained, in most relevant part, a delegation clause, a fee-splitting provision, and discovery limitations. *See id.* at 2779.[7]  In the lower courts, the plaintiff had argued that, pursuant to defenses available under Nevada law, the agreement as a whole was unconscionable for a host of reasons. *Id.* at 2779-80.  On appeal, the Court found that, in light of the delegation clause, the lower courts should not have even addressed the merits of the plaintiffs' unconscionability defenses. *Id.* at 2779.  Justice Scalia, writing for the court, reasoned that the arbitration agreement at issue effectively was composed of two separate agreements: (1) an antecedent agreement to have an arbitrator decide whether the arbitration agreement was enforceable in the first place; and (2) a separate agreement to arbitrate the parties' claims. *Id.* at 2777-78. Accordingly, to the extent the plaintiff had challenged the formation of or substance of the entire agreement, an arbitrator – not a court – would consider those challenges pursuant to the delegation provision. *Id* at 2779.

  After examining the lower court record, the Court found that all of the plaintiff's challenges were directed to the agreement as a whole, rather than to the delegation provision specifically. *Id*. at 2779-80.  Thus, the Court held that the delegation provision was operative, thereby precluding courts from addressing the plaintiffs' challenges in the first instance. *Id.* With respect to the plaintiffs' arguments that the cost-splitting arrangement and discovery limitations set forth in the arbitration agreement were substantively unconscionable, the Court observed that those "procedures . . . were to be used during arbitration under *both* the agreement to arbitrate employment-related disputes *and* the delegation provision." *Id.* at 2780.  However,

---

[7]The Ninth Circuit opinion, which the Court reversed, contains more detail concerning the arbitration agreement at issue and the nature of Jackson's challenges thereto. *See Jackson v. Rent-a-Center W., Inc.*, 581 F.3d 912 (9th Cir. 2008), *rev'd* 130 S. Ct. 2772 (2010).

because the plaintiff had argued that the fee-sharing and discovery procedures rendered the entire agreement invalid, the Court held that the district court should not have considered them. *Id.* at 2780-81.

In *dicta*, the Court also stated as follows:

> It may be that had Jackson challenged the delegation by arguing that these common procedures *as applied* to the delegation provision rendered *that provision* unconscionable, the challenge should have been considered by the court. To make such a claim based on the discovery procedures, Jackson would have had to argue that the limitation upon the number of depositions causes the arbitration of his claim that the Agreement is unenforceable to be unconscionable. That would be, of course, a much more difficult argument to sustain than the argument that the same limitation renders arbitration of his factbound employment-discrimination claim unconscionable. Likewise, the unfairness of the fee-splitting arrangement may be more difficult to establish for the arbitration of enforceability than for arbitration of more complex and fact-related aspects of the alleged employment discrimination.

*Id.* at 2780.[8] Several district courts – as this court did – have applied the analysis suggested by this *dicta* in *Rent-a-Center*, including at least one case in which a plaintiff asserted a cost-prohibitiveness challenge. *See Dean*, 2012 WL 5398653, at *4 n.7 (collecting cases); *Madgrigal v. AT&T Wireless Servs., Inc.*, No. 1:09-cv-0033-OWW-MJS, 2010 WL 5343299 (E.D. Cal. Dec. 20, 2010) (considering cost-prohibitiveness challenge to delegation provision, where plaintiff had alleged state law claims, but finding that plaintiff's supplemental brief failed to

---

[8]The Court's analysis in *Rent-a-Center*, including the *dicta* regarding a cost-prohibitiveness challenge, is complicated by the fact that the plaintiff, Jackson, had asserted only a federal statutory claim under § 1981. Notwithstanding his assertion of a federal statutory claim, it does not appear that Jackson argued before the lower courts, or to the Supreme Court, that a federal *Green Tree* cost-prohibitiveness defense might govern whether the delegation provision was enforceable. *See Rent-a-Center*, 130 S. Ct. at 2785 n.7 (Stevens, J., dissenting) ("The question of unconscionability in this case is one of state law . . . . I understand respondent to have claimed, in accord with Nevada law, that the arbitration agreement contained substantively unconscionable provisions[.]"

address delegation provision specifically and failed to establish that enforcing delegation provision "results in any inequity").

**C.**     ***AT&T v. Concepcion*.**

In *AT&T v. Concepcion*, the Court found that the FAA prohibits states from conditioning the enforceability of certain arbitration agreements on the availability of classwide arbitration procedures.  131 S. Ct. at 1756.  The reasoning of that decision has important implications that essentially foreclose application of the cost-prohibitive challenge suggested in *Rent-a-Center*.

The plaintiff in *Concepcion* had originally filed a putative class action against AT&T, which moved to enforce a consumer services contract that obligated consumers to arbitrate their claims against AT&T individually.  At the time, California recognized a general unconscionability defense to enforcement of a contract, pursuant to which the California Supreme Court had formulated a rule in *Discover Bank v. Sup. Ct.*, 133 P.3d 1100 (Cal. 2005) to determine whether a contract containing a class waiver was enforceable under California law (the "*Discover Bank* rule").  131 S. Ct. at 1746.  California trial courts, including the district court in *Concepcion*, had frequently applied the *Discover Bank* rule to strike down class arbitration waivers as unconscionable.  *Id.*

On appeal, the Court held that the FAA preempted California's *Discover Bank* rule. *Id.131 s.* at 1753.  The court reiterated that FAA § 2's saving clause "permits agreements to arbitrate to be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability, but *not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue*."  *Id.* at 1746 (emphasis added) (internal quotation omitted).  Thus, an issue squarely presented to the Court was whether California's

*Discover Bank* rule, which involved a tailored application of California's general

unconscionability doctrine to the arbitration context, constituted a defense applicable to "any"

contract, or a defense specific to or deriving its meaning from the fact that an arbitration

agreement was at issue.

In analyzing this issue, the Court articulated an even more expansive view of the FAA's

preemptive effect than had been suggested in *Rent-a-Center*:

> When a state law prohibits outright the arbitration of a particular type of claim, the analysis is straightforward. The conflicting rule is displaced by the FAA. But the inquiry becomes more complex *when a doctrine normally thought to be generally applicable, such as duress or, as relevant here, unconscionability, is alleged to have been applied in a fashion that disfavors arbitration.* In *Perry v. Thomas*, for example, we noted that *the FAA's preemptive effect might extend even to grounds traditionally thought to exist "at law or in equity for the revocation of any contract."* We said that a court may not "rely on the uniqueness of an agreement to arbitrate as a basis for a state-law holding that enforcement would be unconscionable, for this would enable the court to effect what the state legislature cannot."

*Id.* at 1747 (internal citations omitted) (emphases added). The Court reiterated that, "[a]lthough

§ 2's savings clause preserves generally applicable contract defenses, nothing in it suggests an

intent to preserve state-law rules that stand as an obstacle to the accomplishment of the FAA's

objectives." *Id.* at 1748. Thus, the savings clause "cannot in reason be construed as [allowing] a

common law right, the continued existence of which would be absolutely inconsistent with the

provisions of the act. In other words, the act cannot be held to destroy itself." *Id.* (internal

quotation omitted) (brackets in original).

Applying this interpretation of its prior case law, the Court construed the California

*Discover Bank* rule as a doctrine that disfavored arbitration and, therefore, was preempted by the

FAA. *Id.* Although the plaintiff had contended that the *Discover Bank* rule would also apply to

14

class waivers concerning litigation – *i.e.*, a context not specific to or occasioned by an arbitration agreement – the Court expressly rejected this argument. *Id.* at 1746-47.

### D. The Kentucky Supreme Court decision in *Schnuerle*

In *Schnuerle*, the plaintiffs had filed a putative class action lawsuit against AT&T in Kentucky state court, asserting only Kentucky state law claims. 376 S.W.3d at 565. After the defendant sought to compel arbitration pursuant to an arbitration agreement that contained a class arbitration waiver, the plaintiffs argued that the class arbitration waiver was unconscionable under Kentucky law. *Id.* at 566. Shortly before the United State Supreme Court issued *Concepcion*, the Kentucky Supreme Court agreed with the plaintiffs and held that the class arbitration waiver was unenforceable. *Id.* However, after the Court issued its opinion in *Concepcion*, the Kentucky Supreme Court reconsidered its previous decision and issued *Schnuerle*, in which it held that *Concepcion* governed the issue presented and required the court to enforce the class arbitration waiver. *Id.* at 573.

In arguing that the court should not find *Concepcion* controlling, the plaintiffs in *Schnuerle* had attempted to distinguish *Concepcion* on three grounds: (1) *Concepcion* merely precluded a state law rule (such as the *Discover Bank* rule) that applied "systematically," rather than on a case-by-case basis; (2) the arbitration agreement at issue in *Schnuerle* was "less consumer-friendly" than the agreement at issue in *Concepcion*; and (3) the *Mitsubishi/Green Tree* line of cases preserved a plaintiff's ability to strike a class action waiver to the extent consumers are unable to vindicate their rights. Although the court rejected the first two of these arguments, it stated as follows with respect to the third:

> [W]e strongly agree with appellants that *Concepcion* does not disturb the basic principle that an arbitration clause is not enforceable if it fails to provide plaintiffs

> with an adequate opportunity to vindicate their claims. [citing *Mitsubishi*, *Green Tree*, *Gilmer*, and *14 Penn Plaza*, 556 U.S. 247 (2009)]. Accordingly, arbitration clauses may continue to be struck down as unconscionable if their terms strip claimants of a statutory right, which cannot be vindicated by arbitration, because, for example, the arbitration costs on the plaintiff are prohibitively high; or the location of the arbitration is designated as an impediment to vindicating one's rights. But again, simply the impracticality of pursuing a single, small dollar claim is not regarded as an impediment to vindicating one's rights.

*Id.* at 572-73. With this principle in mind, the court analyzed the plaintiffs' circumstances and determined that "it would be inaccurate to conclude that the consumers in this case cannot adequately vindicate their rights as contemplated in *Mitsubishi*," citing to contractual provisions permitting the plaintiffs to file small claims in lieu of arbitration. *Id.* at 573.

Given that the claims at issue in *Schnuerle* were all Kentucky state law claims, it appears that the Kentucky Supreme Court was applying the *Mitsubishi* cost-prohibitiveness analysis to the plaintiffs' state law claims, even though that analysis is specific to the vindication of federal statutory rights. Of course, the Kentucky Supreme Court could look to federal doctrines when fashioning a Kentucky rule on a parallel issue. Indeed, this court in *Dean II* essentially construed the Kentucky Supreme Court as endorsing a cost-prohibitiveness defense under Kentucky law that parallels the federal doctrine. Regardless of the soundness of the *Schnuerle* court's reasoning, it provided this court with a recent indication of how the Kentucky Supreme Court might have decided the issue of cost-prohibitiveness under Kentucky law, if the issue had been squarely presented. Be that as may, upon reconsideration this court acknowledges that *Schnuerle*'s validity as to the existence of a cost-prohibitiveness defense under Kentucky law is at least debatable.

In *Daymar*, which was issued one month after *Schnuerle* and made no reference to that case, the Kentucky Court of Appeals held that Kentucky does not recognize a cost-

16

prohibitiveness defense to arbitration.  *Daymar*, 2012 WL 4335393, at *10.[9]  However, in

Kentucky state courts, unpublished decisions issued after January 1, 2003 may be cited as

precedential weight only "if there is no published opinion that would adequately address the

issue before the court."  Ky. R. Civ. P. 76.28(4)(c) (2013).  Whether *Schnuerle* "adequately

address[es]" the issue of the existence of a cost-prohibitiveness defense under Kentucky law and,

therefore, would constitute persuasive precedent on this issue is a close call; if so, *Daymar*

would have minimal precedential weight (at least within Kentucky courts); if not, *Daymar* would

provide the best indication of Kentucky law on the issue.  Given that this is a close question on

which the court previously ruled, this court does not interpret its previous holding that Kentucky

(via *Schnuerle*) recognizes a cost-prohibitive defense as constituting a "clear" error of law.

However, as described in the next section, the FAA preempts this defense in any case.

IV.    **Application**

        Having analyzed these various cases, the remaining issue presented is whether the

Kentucky cost-prohibitiveness defense is a "generally applicable" defense that falls within the

FAA § 2's saving clause.

        As articulated in *Concepcion*, the question turns on whether the defense is specific to

arbitration or is occasioned by the fact that an arbitration agreement (as opposed to some other

form of agreement) is at issue.  Also, as the Court found in *Concepcion*, even where a state

applies a *general* doctrine of unconscionability to develop a substantive unconscionability

---

        [9]In her concurrence in *Stutler*, Judge Moore noted that the Kentucky Court of Appeals
decision in *Conseco* had suggested in *dicta* that a cost-prohibitiveness defense, analogous to that
articulated in *Green Tree*, might be available under Kentucky law, although the *Conseco* court
had not actually reached the issue.  *See Stutler*, 448 F.3d at 348.  The *Daymar* court appears to
have construed *Conseco* more narrowly.

standard specific to the arbitration context, the FAA preempts that state law defense.

Here, the Kentucky Supreme Court in *Schnuerle* looked to the *Mitsubishi/Green Tree* line of cases to assess whether it was cost-prohibitive for the plaintiffs to arbitrate their Kentucky state law claims. The *Mitsubishi/Green Tree* framework is a body of federal substantive law developed by the Court specifically to address situations in which the interest in vindicating federal statutory rights conflicts with the federal interest in enforcing arbitration agreements as they are written – *i.e.*, a doctrine *specific* to arbitration. Thus, where the Kentucky Supreme Court relied on that doctrine in applying a cost-prohibitiveness analysis in *Schnuerle*, it is clear that the defense is *not* applicable to "any" contract within the meaning of the FAA § 2's savings clause.

Furthermore, even if this court were to construe *Schnuerle* and/or *Conseco* as establishing a cost-prohibitiveness doctrine based only on the application of general Kentucky unconscionability principles, the result would be the same. That is, as with the California Supreme Court's attempt to apply general California unconscionability principles to condition the terms of arbitration agreements in *Discover Bank*, the application of general Kentucky substantive unconscionability principles to preclude enforcement of an arbitration agreement based on cost-prohibitiveness would frustrate the FAA's purposes.

Several sources of authority support this court's conclusion that the FAA preempts the cost-prohibitiveness defense asserted here. In *Stutler*, the Sixth Circuit suggested in *dicta* that the application of a cost-prohibitiveness defense analogous to the *Green Tree* defense would constitute "an absurd result" that is inconsistent with the FAA. 448 F.3d at 347. In *Daymar*, the Kentucky Court of Appeals also reached essentially the same conclusion. 2012 WL 4335393, at

*10 ("In a case involving a federal statutory claim, the court is weighing both the federal policy at issue and the pro-arbitration policy of the FAA. *When a federal statutory claim is not involved, the FAA trumps any conflicting state law interest*.") (emphasis added). Post-*Concepcion*, a federal district court recently noted that "applying a vindication analysis to state statutory claims would appear to be incompatible with the Supreme Court's analysis in *Concepcion*." *See Orman v. Citicorp.*, No. 11 Civ. 7086(DAB), 2012 WL 4039850, at*3 (S.D.N.Y. Sept. 12, 2012). Furthermore, the Court has issued at least two post-*Concepcion* decisions, including one decision issued after *Dean II*, further demonstrating the expansive preemptive scope of the FAA. *See Marmet Health Care Center, Inc. v. Brown*, 132 S. Ct. 1201, 182 L. Ed. 2d 42 (2012); *Nitro-Lift Techns., L.L.C. v. Howard*, 133 S. Ct. 500 (2012) (issued Nov. 26, 2012).

In response, the plaintiffs argue, without citation to any Kentucky case law, that the doctrine of cost-prohibitiveness "would" apply in the context of a forum selection clause or a clause obligating the prevailing party to pay the losing party's attorney's fees. In the absence of any legal authority for the plaintiffs' position, the court is unpersuaded. Also, as the defendants point out, under Kentucky law, the enforceability of a forum selection clause is governed by a multi-factor test that is distinct from the cost-prohibitiveness analysis at issue here. *See Prezocki v. Bullock Garages, Inc.*, 938 S.W.2d 888, 889 (Ky. 1997); *Wilder v. Absorption Corp.*, 107 S.W.3d 181, 183 (Ky. 2003). Furthermore, even if the plaintiffs had demonstrated that a cost-shifting provision that operates against the prevailing party would be unenforceable under Kentucky law, that consideration might favor *severing* that term from a contract, not voiding the contract entirely.

Regardless, the Supreme Court in *Concepcion* found that state law policies that threaten to disproportionately disfavor arbitration agreements are preempted by the FAA. Thus, even if there were some theoretical application of the cost-prohibitiveness doctrine in another context, such as in litigation, it is difficult to see how applying an *ex post facto* cost-prohibitiveness defense would not threaten to frustrate the enforcement of otherwise binding arbitration agreements, thereby running afoul of the FAA's purposes. That is, whether to arbitrate would turn not on the terms to which the parties agreed, but on the amount of money that one party possesses at the time of suit.

Accordingly, although *Rent-a-Center* indicated that federal district courts could entertain state law challenges to the enforcement of a delegation clause based on fee-splitting, this court construes *Concepcion* and other relevant precedent as precluding the assertion of a Kentucky cost-prohibitiveness defense to the Delegation Clause here.

For these reasons, the court finds that it committed a clear error of law in applying a Kentucky cost-prohibitiveness defense to the enforcement of the Delegation Clause and to the enforcement of the Arbitration Clause. Therefore, the court will change its previous ruling in *Dean II* and will enforce the Delegation Clause. Accordingly, to the extent the plaintiffs seek to challenge the enforceability of the Arbitration Clause (or any terms contained therein), they will need to address those objections to the arbitrator pursuant to the Delegation Clause.[10]

_____

[10]The plaintiffs have asserted several objections to enforcement of the Arbitration Clause as to some or all defendants, arguing that (1) the Arbitration Clause is procedurally and/or substantively unconscionable; (2) they cannot be forced to arbitrate class claims or antitrust claims; and (3) they cannot be forced to arbitrate their claims against defendant Mark Gabis. Because all of these arguments relate to the enforceability of the Arbitration Clause, the court construes them as arguments that must be presented to (and considered by) the arbitrator pursuant to the Delegation Clause.

## ADDITIONAL ISSUES PRESENTED

## I.    Defendants' Arguments Regarding the Court's Factual Findings in *Dean II*

The defendants argue that the court should vacate its previous holding to the extent it was based on misrepresentations concerning the defendants' actions in *Dixon* and the First and Second Sets of Kentucky Arbitration Proceedings.  The defendants' main argument is that the Sales Affidavit provided a misleading or incomplete picture of those events.

As an initial matter, to the extent the court relied on representations from Attorney Sales in reaching its holding in *Dean II*, the issue is substantially mooted by the court's holding that the Delegation Clause will be enforced after all.  Also, the defendants plainly should have rebutted representations in the Sales Affidavit before the court rendered its decision in *Dean II*, and could have done so through the simple expedient of requesting leave of court to file supplemental materials, as the parties did multiple times with respect to other relevant issues presented for the court's consideration.[11]  At any rate, given that the issue is moot, the court need not determine whether the defendants' new rebuttal representations should be considered at this stage, let alone whether they would have affected the outcome of the court's decision in *Dean II*.

Nevertheless, based on the defendants' representations with respect to the instant motion, it appears that the court's observation in *Dean II* that defense counsel made misrepresentations to a Kentucky court in *Dixon* was overstated.  Thus, that statement shall be considered vacated by this opinion.  Given that the remaining relief requested in this regard is otherwise moot, the court

---

[11]Although the defendants claim that they did not initially regard the Sales Affidavit representations as material, the court notes that both parties' initial evidentiary submissions had addressed the costs of arbitration actually incurred in the Kentucky arbitration proceedings.

expresses no opinion concerning the merits of the defendants' remaining contentions about the accuracy and completeness of the Sales Affidavit or the inferences that the court drew from that affidavit.

## II.    Dismissal or Stay

When an issue is subject to arbitration under the FAA, the statute provides that a trial court "shall on application of one of the parties stay the trial until such arbitration has been held [.]"  Notwithstanding the term "shall," the Sixth Circuit has identified authority establishing that, where all of the claims at issue are subject to arbitration, a district court may dismiss the case. *See Green v. Ameritech Corp.*, 200 F.3d 967, 973 (6th Cir. 2000)  Thus, district courts often grant dismissal of claims that are subject to arbitration, reasoning that "any post-arbitration remedies sought by the parties will serve no purpose, since any post-arbitration remedies sought by the parties will entail a limited judicial review, and not renewed consideration and adjudication of the merits of the controversy."  *Tolbert v. Coast to Coast Dealer Servs., Inc.*, 789 F. Supp. 2d 811, 819 (N.D. Ohio 2011) (internal quotation omitted).  On the other hand, some district courts have found that, where granting a stay would serve a valid purpose, the court should stay the case rather than dismiss it.  *See, e.g.*, *Harris v. Fiserv Solutions, Inc.*, No. 3:06-0121, 2006 WL 1083390, at *3 (M.D. Tenn. Apr. 24, 2006).

Here, enforcement of the Delegation Clause presents unusual circumstances justifying a stay of the action, rather than dismissal.  Under the Delegation Clause, an arbitrator will determine whether the plaintiffs' claims are arbitrable in the first place.  Accordingly, if the arbitrator were to find that the Arbitration Clause is unenforceable in whole or in part, the plaintiffs may be able to return to this court to pursue one or more of their claims on the merits.

Under these circumstances, a stay of the case is justified, at least until an arbitrator determines whether the Arbitration Clause is enforceable as to particular plaintiffs.

## III.    Pending Motions

Because the court finds that the Delegation Clause will be enforced, the defendants' pending Motion to Dismiss the named plaintiffs' claims (Docket No. 86) and Motion to Strike Class Allegations (Docket No. 87) will be denied as moot.

## IV.    Equitable Considerations

Although this court is constrained to find that the plaintiffs' cost-prohibitiveness defense is preempted by the FAA, the potential implications of this holding present a serious fairness issue. Based on the court's factual findings in *Dean II*, the court is concerned that one or more of the named plaintiffs in this action will not be able to afford the out-of-pocket costs to arbitrate, even under conservative cost assumptions. Indeed, several of the plaintiffs have represented that they have no income and no unencumbered assets whatsoever. To the extent any plaintiffs are foreclosed from pursuing their claims due to the up-front costs, their substantive right to recovery under Kentucky law would essentially be extinguished.

While required by the FAA, this result strikes the court as manifestly unjust and, perhaps, deserving of legislative attention. This court harbors no hostility towards arbitration, which can provide a streamlined and efficient means of resolving disputes and which presumptively reflects a bargained-for agreement to avoid the judicial forum. However, in cases such as the one presented here, requiring impoverished individuals to arbitrate could effectively prevent them

from exercising their rights as state citizens.[12]

## CONCLUSION

For the reasons stated herein, the court will change its previous decision (Docket No. 75), will grant the defendants' Motion to Compel Arbitration, and will enforce the Delegation Clause, pursuant to which an arbitrator will address the merits of the plaintiffs' challenges to the enforceability of the Arbitration Clause.  Accordingly, the court will stay this action pending arbitration and will deny the defendants' pending Motion to Dismiss and Motion to Strike Class Allegations as moot.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge

---

[12]The court trusts that, as the defendants have steadfastly argued here, the costs of arbitrating arbitrability (and, perhaps, the underlying claims) will be relatively low.  Indeed, the defendants have represented that, with respect to at least some of the parallel claims in Kentucky, those claims are proceeding under the Consumer Supplementary Procedures, under which (1) the defendants were obligated to waive the fee-splitting provision and (2) the costs to each plaintiff were no higher than $375, and, in one case, only $125.